1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CONFESOR NUNEZ,                        No.  2:14-cv-1180 TLN AC P

12              Plaintiff,

13        v.                                ORDER AND FINDINGS AND
                                            RECOMMENDATIONS
14   NASEER, M.D., et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18   U.S.C. § 1983.  Currently before the court are defendant Naseer's and defendant Smith and

19   Smiley's fully briefed motions for summary judgment.  ECF Nos. 29, 30.  Also before the court

20   are plaintiff's requests for appointment of counsel.  ECF Nos. 27, 35.

21      I.   Procedural History

22        Plaintiff filed his original complaint on May 14, 2014.  ECF No. 1.  On September 29,

23   2014, the court dismissed plaintiff's complaint with leave to amend.  ECF No. 6.  Plaintiff filed

24   an amended complaint on October 21, 2014.  ECF No. 9.  On June 25, 2015, the court issued a

25   screening order.  ECF No. 10.  The court found that plaintiff alleged a cognizable claim against

26   defendants Naseer, Smith, and Smiley for deliberate indifference to plaintiff's serious medical

27   needs in violation of the Eighth Amendment.  Id. at 3.  The court dismissed, however, without

28   leave to amend, plaintiff's Fourteenth Amendment equal protection claim.  Id. at 3-4.  On October

1

28, 2015, defendants answered the amended complaint. ECF No. 18.

On June 10, 2016, defendant Naseer filed a motion for summary judgment and defendants Smith and Smiley filed a separate motion for summary judgment. ECF Nos. 29, 30. Plaintiff filed oppositions to both motions. ECF Nos. 36, 39, 40, 41. Defendants Smith and Smiley filed a reply on August 22, 2016, ECF No. 38, and defendant Naseer filed a reply on September 22, 2016, ECF No. 44.

II.     Plaintiff's Allegations

In the amended complaint, plaintiff alleges that Dr. Naseer was deliberately indifferent to plaintiff's serious medical need for orthopedic boots in violation of the Eighth Amendment. ECF No. 9 at 2, 5. Plaintiff suffers from psoriatic arthritis, a chronic care condition associated with chronic pain. Id. at 5. Plaintiff's toes are twisted and his feet hurt constantly. Plaintiff asserts that Dr. Naseer knew about plaintiff's problems with his feet, but denied plaintiff orthopedic boots with soft soles to relieve the pain in plaintiff's feet. According to plaintiff, Dr. Naseer also failed to renew "chrono's pertaining to [plaintiff's] disabilities," thereby depriving plaintiff of relief. Id. Later in the amended complaint, plaintiff briefly refers to the allegation that Dr. Naseer denied plaintiff pain medication (tramadol). Id. at 9.

Plaintiff further alleges that Dr. C. Smith and W. David Smiley acted with deliberate indifference to plaintiff's serious medical needs when they denied plaintiff's healthcare appeals regarding his request for orthopedic boots and tramadol at the first and second levels of review. ECF No. 9 at 7, 9. According to plaintiff, defendant Smith had the power to override Naseer's decision and defendant Smiley had the power to override Naseer and Smith's decision. Id.

III.    Motions for Summary Judgment

        A.    Defendants' Arguments

              1.    Defendant Naseer

Dr. Naseer contends that he was not deliberately indifferent to plaintiff's medical needs by denying a request for new orthotic boots, by failing to refer plaintiff to podiatry, by diagnosing plaintiff with hammertoes, or by denying plaintiff tramadol; that plaintiff cannot establish that his

////

actions caused his injury; and that he is alternatively entitled to qualified immunity.[1]  ECF No. 29-1 at 16-22.

### 2.  Defendants Smith and Smiley

Defendants Smith and Smiley assert that they were not deliberately indifferent to any serious medical need in connection with their responses to plaintiff's grievances.  They assert that plaintiff received medical care consistent with constitutional standards when the Pain Management Committee determined that tramadol was not a necessary treatment and when plaintiff was examined by a podiatrist and received the orthopedic boots that he requested.  Defendant Smiley further contends that he is not a physician and did not treat plaintiff, and therefore, he was not the "moving force" behind any alleged constitutional deprivation.  ECF No. 30-2 at 7, 14.  He argues that he is not qualified to second-guess medical judgments, nor can he be held liable for relying on the medical expertise of plaintiff's treatment providers; that he was not aware of a serious risk of substantial harm; and that he ensured that proper personnel had determined that plaintiff was receiving a medically appropriate course of treatment, and was not aware of any serious risk of harm to plaintiff.  Id. at 7, 15.  Defendants Smith and Smiley argue that they are alternatively entitled to qualified immunity.  Id. at 22.

### B.  Plaintiff's Arguments

It is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers."  Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).  Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants."  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir. 2012) (en banc).  However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof."  Jacobsen v. Filler, 790 F.2d 1362,

---

[1]  Although not set forth in his amended complaint, plaintiff also claims in his deposition that Dr. Naseer incorrectly diagnosed plaintiff with hammertoes and did not refer him to podiatry.  ECF No. 29-5 at 22-25 [Nunez Dep. 70:24-73:1-9].

1364-65 & n.4 (9th Cir. 1986).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id.

The court is mindful of the Ninth Circuit's more overarching caution in this context, as noted above, that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, though plaintiff has largely complied with the rules of procedure, the court will consider the record before it in its entirety.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

### C.  Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).  Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

On June 10, 2016, defendant Naseer and defendants Smith and Smiley served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF Nos. 29, 30-1.  See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (movant may provide notice) (en banc).

### D.  Legal Standards Governing Eighth Amendment Claims

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992).  The requisite state of mind for a medical claim is "deliberate indifference."  Hudson v. McMillian, 503 U.S. 1, 5 (1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds WMX Techs. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Examples of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, at1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989)).

In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference."  "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does

not suffice." Wood, 900 F.2d at 1334. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Farmer, 511 U.S. at 837 & n.5. It is not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Rather, deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." Id. (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood, 900 F.2d at 1334.

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. To establish a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

    E. Undisputed Material Facts[2]

At all times relevant to the claims in the amended complaint, plaintiff was an inmate in the custody of the California Department of Corrections (CDCR) at Mule Creek State Prison (MCSP), and defendants Naseer, Smith, and Smiley were employed at MCSP. ECF No. 29-2 at 1, ¶ 1; ECF No. 30-3 at 2, ¶ ¶ 1-3; ECF No. 36 at 10, ¶¶ 1-3; ECF No. 41 at 1, ¶ 1. Dr. Naseer was plaintiff's treating physician; Dr. Smith was the Chief Physician and Surgeon; and defendant Smiley was the Chief Executive Officer of Health Care Services. ECF No. 30-3 at 2, ¶¶ 1-3; ECF No. 36 at 10, ¶¶ 1-3. Defendant Smiley is not a licensed physician and cannot provide direct

---

[2] Relevant factual disputes are noted.

7

health care services to inmates at MCSP.  ECF No. 30-3 at 2, ¶ 4; ECF No. 36 at 11, ¶ 4.

1. Plaintiff's Medical History Before His Transfer to MCSP

Medical records indicate that plaintiff began experiencing symptoms of psoriatic arthritis[3] over a decade before the events giving rise to this lawsuit.  ECF No. 30-3 at 2, ¶ 6; ECF No. 36 at 11, ¶ 6.  In May 2003, plaintiff consulted with podiatry and was diagnosed with having hammertoes.  ECF No. 29-2 at 2, ¶ 2; ECF No. 41 at 1, ¶ 2.

In January 2005, plaintiff's condition was considered to be non-life threatening and non-debilitating.  Nevertheless, plaintiff was given an accommodation for modified state boots with crepe soles.  Specifically, the accommodation form stated that "[p]ending issuance of the modified state boots," plaintiff had "no medical restrictions in wearing [the] original issued state boots/shoes to access all areas of the institution, including visiting, educational programs, and work assignments."  ECF No. 29-3 at 19.

By July 2006, plaintiff was being treated by a rheumatologist.  In a July 19, 2006 consultation, plaintiff complained of morning stiffness and tenderness in his feet and wrist.  Based on these symptoms, the treating physician concluded that plaintiff likely suffered from inflammatory arthritis and that the pain in his feet suggested the "possibility of psoriatic" arthritis.  The treating doctor ordered comprehensive radiological tests to evaluate plaintiff's extremities.  ECF No. 29-3 at 21.  Despite plaintiff's symptoms, the August 2006 x-rays of plaintiff's feet and hands revealed no evidence of psoriatric arthritis or any fractures or mal-alignments.  ECF No. 29-3 at 23.  The radiological findings remained consistent with the earlier diagnoses that plaintiff had a few hammertoe deformities and degenerative bone changes in his left wrist.  ECF No. 29-2 at 2, ¶ 4; ECF No. 29-3 at 23; ECF No. 41 at 1, ¶ 4.

On February 9, 2007, plaintiff's accommodation for state issue soft boots and insoles was approved.   ECF No. 29-2 at 2, ¶ 5; ECF No. 29-3 at 25; ECF No. 41 at 2, ¶ 5.

_____

[3]  Psoriatic arthritis is a degenerative joint disease that can cause joint pain, inflammation, and stiffness.  The symptoms of psoriatic arthritis can often be managed and controlled with a combination of treatments, such as anti-inflammatory drugs, antirheumatic drugs (such as Humira and Methotrexate), exercise, and physical therapy.  ECF No. 30-3 at 2, ¶ 7; ECF No. 30-5 at 2, ¶ 6; ECF No. 36 at 11, ¶ 7.

During the next few years, plaintiff received treatment for psoriatic arthritis and received a course of medications to address his professed pain, including the narcotic drug tramadol (brand name Ultram).  ECF No. 30-6 at 41, 43; ECF No. 30-7 at 8-13 [Nunez Dep. at 17-25].  Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain.  It is a synthetic opioid/narcotic classified as a controlled substance based on its abuse potential.  ECF No. 29-2 at 4, ¶ 18; ECF No. 29-4 at 3, ¶ 5 n.1; ECF No. 41 at 3, ¶ 18; ECF No. 30-6 at 3, ¶ 8.

On May 13, 2010, plaintiff was treated by a podiatrist who reiterated an earlier diagnosis of psoriatic arthritis.  The podiatrist recommended that plaintiff receive orthopedic shoes with a deep toe box to accommodate his toes.  ECF No. 29-2 at 2, ¶ 6; ECF No. 29-3 at 27; ECF No. 41 at 2, ¶ 6.  Plaintiff's orthotic shoes were ordered on August 25, 2010.  ECF No. 29-2 at 2, ¶ 7; ECF No. 29-3 at 29; ECF No. 41 at 2, ¶ 7.

During an exam in April 2012, plaintiff claimed that his orthotics were "worn out" and requested new ones.  His physician issued a referral for orthotics.  ECF No. 29-2 at 2, ¶ 8; ECF No. 29-3 at 31; ECF No. 41 at 2, ¶ 8; ECF No. 30-6 at 35.

On June 1, 2012, plaintiff consulted with a rheumatologist who determined that plaintiff's pain complaints were consistent with prior exams.  The rheumatologist continued plaintiff's pain management regimen, which included Methotrexate (treats inflammatory arthritis) and Humira (treats inflammatory arthritis), and referred plaintiff to podiatry for an evaluation to determine the need for orthotics.  ECF No. 29-2 at 2, ¶ 9; ECF No. 29-3 at 33; ECF No. 41 at 2, ¶ 9.

On June 19, 2012, the Medical Accommodations Review Committee (MARC) at High Desert State Prison denied the April 2012 request for orthotics.  ECF No. 29-2 at 2, ¶ 10; ECF No. 29-3 at 35; ECF No. 41 at 2, ¶ 10.

Plaintiff's condition continued to be monitored throughout 2012.  In an August 2012 consultation with rheumatology, plaintiff complained of pain in both his knees and feet and reported taking the prescribed tramadol twice a day, along with Methotrexate and Humira.  The rheumatologist continued the Methotrexate and increased the tramadol to three times a day.  ECF No. 29-3 at 37.  On November 28, 2012, updated x-rays of plaintiff's extremities were taken.  The radiological findings for the left foot x-ray showed that plaintiff had hammertoe deformities in his

second and fourth toes.  ECF No. 29-2 at 2-3, ¶ 11; ECF No. 29-3 at 39; ECF No. 41 at 2, ¶ 11.

2.  Plaintiff's Treatment at MCSP

Plaintiff transferred to MCSP in December 2012 and brought with him his orthopedic boots and inserts.  ECF No. 29-2 at 3, ¶¶ 12-13; ECF No. 41 at 2, ¶¶ 12-13.  According to plaintiff, both his boots and soft insoles were specially made to order for him.  He explains that the orthotic soles in his boots are "softer" than the standard state boot, which makes it "easy to walk."  ECF No. 30-7 at 9, 22 [Nunez Dep. at 19:10-15, 50:15-17].

On January 16, 2013, Dr. Naseer met with plaintiff for the first time.  Dr. Nasser examined plaintiff as part of a chronic pain consultation.  Before the exam, Dr. Naseer reviewed plaintiff's extensive medical file, including the November 28, 2012, radiological impressions indicating plaintiff's hammertoe diagnosis.  Plaintiff requested to continue his tramadol prescription and discontinue Methadone.  Plaintiff's presentation upon examination was normal: he did not have swelling or limited range of motion and had a "normal" gait.  According to the chronic pain intake form, plaintiff denied having any restrictions in his daily activities and reported that he was exercising 60 minutes a day, including walking, jogging, and push-ups.  ECF No. 29-3 at 43-44; ECF No. 29-4 at 2-3, ¶ 5.

During the January 16, 2013 exam, plaintiff disclosed that he had a history of substance abuse, including marijuana, cocaine, and methamphetamine.  At the time of the exam, plaintiff was taking Humira, Methotrexate, NSAID (a mild steroid like Tylenol or Advil) and tramadol for his condition.  Given plaintiff's limited symptoms and active life style, Dr. Naseer did not believe that plaintiff met the criteria for narcotic medications such as tramadol.  Dr. Nasser told plaintiff that he would consult with the Pain Management Committee to determine plaintiff's continued eligibility for narcotic pain medication.  ECF No. 29-2 at 3, ¶ 15; ECF No. 29-3 at 43-44; ECF No. 29-4 at 2-3, ¶ 5.

A couple of weeks later, on February 1, 2013, Dr. Naseer examined plaintiff again.  During the exam, plaintiff requested new "special shoes" to replace the orthopedic boots he was wearing, claiming they were "worn out."  Dr. Naseer's examination revealed that visually, plaintiff's left foot middle toe had a slight flexion deformity, but beyond that, there were no signs

to medically indicate a need for accommodation.  Plaintiff had full range of motion along with a "normal" gait, no significant foot deformity, and no inflammation.  Dr. Naseer reviewed plaintiff's medical records for a chrono and only identified the prior request submitted in April 2012 that had been denied.  Finding that plaintiff had no significant foot deformity, no inflammation, and no existing chrono, Dr. Naseer denied plaintiff's request for new "special shoes."  ECF No. 29-3 at 46.

On March 4, 2013, Dr. Naseer presented plaintiff's case to the Pain Management Committee to evaluate whether plaintiff's tramadol dose should be tapered and then discontinued.  At that time, plaintiff's treatment for psoriatic arthritis included tramadol at a dose of 200 milligrams twice per day, Humira, and Methotrexate.  Dr. Naseer, as plaintiff's primary care physician, expressed concern that continuing to treat plaintiff with tramadol was not advisable because further treatment with the drug created a greater risk than benefit for his patient.  ECF No. 29-3 at 48-49; ECF No. 29-4 at 4, ¶ 7.

The committee concurred with Dr. Naseer's assessment that continued treatment with tramadol was not appropriate for plaintiff and that plaintiff should be tapered off the medication.  Relevant to the committee's decision was the determination that plaintiff's psoriatic arthritis was well-controlled at that time, that physical therapy helped control symptoms of his psoriatic arthritis, and that plaintiff was able to exercise for one hour a day, including jogging, push-ups, and walking.  It also determined that plaintiff should be provided non-narcotic medications to address his pain management concerns, because the risks of further treatment with opiates/narcotics such as tramadol outweighed the potential benefit for plaintiff, who had a history of drug use.  ECF No. 29-3 at 48-49.  Dr. Smith participated in the Pain Management Committee meeting.  ECF No. 30-3 at 3, ¶ 10; ECF No. 36 at 11, ¶ 10.

Plaintiff was next examined by Dr. Naseer on March 18, 2013.  Plaintiff reported that he was doing "good" and able to engage in all activities.  Dr. Naseer noted that plaintiff's condition was "at goal" and told plaintiff that the Pain Management Committee decided to discontinue the tramadol prescription and that plaintiff would be tapered off the medication.  Dr. Naseer continued plaintiff's other pain medications (Humira, Methotrexate, and NSAID) and instructed

him to continue his home exercise program.  ECF No. 29-2 at 4, ¶ 19; ECF No. 29-3 at 51; ECF No. 29-4 at 4, ¶ 8; ECF No. 41 at 3, ¶ 19.

On March 29, 2013, plaintiff consulted with rheumatology.  The rheumatologist found that plaintiff's arthritis was well controlled.  ECF No. 29-2 at 4, ¶ 20; ECF No. 29-3 at 53; ECF No. 29-4 at 4-5, ¶ 9; ECF No. 41 at 3, ¶ 20.  The rheumatologist noted that plaintiff's pain and mobility were better with tramadol and referred him to podiatry.  ECF No. 29-3 at 53.

According to plaintiff, his last dose of tramodol was on or around March 31, 2013.  ECF No. 30-7, at 14 [Nunez Dep. at 26:16-19].  After plaintiff's tramadol prescription expired, plaintiff's psoriatic arthritis and associated pain were treated with Naproxen and other medications.  ECF No. 30-5 at 10.

On April 11, 2013, Dr. Nasser met with plaintiff to follow up on the rheumatology appointment.  Dr. Nasser again examined plaintiff, who complained of pain.  Consistent with the rheumatologist's findings, Dr. Nasser observed that plaintiff was doing well, showed no signs of distress, and continued to have a "normal" gait.  To address plaintiff's pain, Dr. Naseer recommended an additional non-narcotic pain medication but plaintiff refused it, asserting it was a "psych med."  Because plaintiff rejected the offered medication, Dr. Naseer continued plaintiff's prior prescriptions and also gave him a referral for podiatry, pursuant to the rheumatologist's recommendation.  ECF No. 29-2 at 4-5, ¶ 22; ECF No. 29-3 at 57; ECF No. 29-4 at 4-5, ¶ 9; ECF No. 41 at 3, ¶ 22.

                            a.   Plaintiff's Orthopedic Boots Health Care Appeal

On March 3, 2013, plaintiff filed a health care appeal regarding a request for orthopedic boots.  ECF No. 9 at 4 ¶ 1, 14-17; ECF No. 30-3 at 5, ¶ 32; ECF No. 36 at 14, ¶ 32.  Before responding to the grievance at the first level of review, Dr. Smith referred plaintiff to a podiatrist to assess any need for orthopedics.  ECF No. 9 at 19-20; No. 29-3 at 55; ECF No. 30-3 at 5, ¶ 33; ECF No. 36 at 14, ¶ 33.  After it came to Dr. Smith's attention that plaintiff had been unable to see the podiatrist as originally scheduled, Dr. Smith made a second referral, characterizing the request as urgent.  ECF No. 30-5 at 5, ¶ 37; ECF No. 30-5 at 18; ECF No. 36 at 14, ¶ 37.

////

Dr. Smith denied the appeal request because plaintiff's health records showed that he had no functional impairment and Dr. Naseer noted no significant foot deformity showing that orthopedics were medically necessary. ECF No. 30-5 at 4, ¶ 15. Dr. Smith did not examine plaintiff in connection with his request for orthopedic boots, and plaintiff was never under his direct care. ECF No. 30-3 at 5, ¶ 36; ECF No. 36 at 14, ¶ 36.

Defendant Smiley's sole involvement regarding the issue of plaintiff's orthopedic boots was his review of the grievance regarding orthopedic boots and his response at the second level of review. Smiley did not provide medical advice to Dr. Naseer regarding plaintiff's request for orthopedic boots. Smiley's review of that grievance indicated that plaintiff was receiving timely and appropriate treatment from his care providers. ECF No. 9 at 9-10, 22-24; ECF No. 30-4 at 2, ¶¶ 5-6.

b.  Plaintiff's Tramadol Health Care Appeal

On March 31, 2013, plaintiff filed a health care appeal seeking to have the tramadol reinstated. ECF No. 9 at 29-32.

On April 22, 2013, Dr. Naseer interviewed plaintiff in connection with the review on appeal. Dr. Naseer again reviewed plaintiff's medical records and discussed his findings with plaintiff. He explained to plaintiff that he was affirming his prior decision to discontinue tramadol because plaintiff's physical exam was essentially normal, he was able to engage in daily living activities, including exercise and sports, his x-rays evidenced only mild degenerative arthritis, and the Pain Management Committee concluded against further narcotic treatment. ECF No. 29-3 at 7, 59.

On May 8, 2013, Dr. Smith denied the first level appeal regarding the discontinuance of tramadol, concluding that, based on plaintiff's medical records and interview with Dr. Naseer, plaintiff was functioning well on his treatment plan; he was being regularly examined by a rheumatologist for his psoriatic arthritis, which was clinically controlled; he had no functional impairment; and treatment with tramadol exposed plaintiff to a greater risk than potential benefit. ECF No. 9 at 92-93; ECF No. 30-3 at 4, ¶ 16; ECF No. 30-5 at 3-5, ¶ 12. Dr. Smith did not examine plaintiff in connection with his request for tramadol, and plaintiff was never under Dr.

13

1    Smith's direct care.  ECF No. 30-3 at 4, ¶ 17; ECF No. 36 at 12, ¶ 17.

2           Defendant Smiley's sole involvement regarding the issue of plaintiff's treatment with

3    tramadol was his review of the grievance regarding tramadol and response at the second level of

4    review.[4]  ECF No. 9 at 9-10, 95-97; ECF No. 30-3 at 4, ¶ 21; ECF No. 30-4 at 2, ¶ 4.  Smiley did

5    not provide medical advice to Dr. Naseer or the Pain Management Committee regarding the

6    determination to discontinue plaintiff's prescription for tramadol.  ECF No. 30-3 at 4, ¶ 22; ECF

7    No. 36 at 13, ¶ 22.  Smiley's review of the grievance regarding tramadol indicated that plaintiff

8    received timely and ongoing treatment from his care providers.  ECF No. 30-3 at 4, ¶ 23; ECF

9    No. 36 at 13, ¶ 23.

10                   3.   Plaintiff's Continued Treatment and New Orthopedic Boots

11          Dr. Naseer's final exam of plaintiff occurred on May 3, 2013.  ECF No. 29-2 at 5, ¶ 24;

12   ECF No. 29-3 at 61; ECF No. 29-4 at 5-6, ¶ 11; ECF No. 41 at 3, ¶ 24.  Dr. Naseer noted that

13   plaintiff complained of generalized joint pain and stiffness in the morning for 15-20 minutes.

14   ECF No. 29-3 at 61; ECF No. 29-4 at 5-6, ¶ 11.  Dr. Naseer again discussed with plaintiff the

15   possibility of taking additional medications for pain but again plaintiff hesitated, claiming he was

16   fearful of multiple medications that may have psychological effects.  Dr. Naseer told plaintiff that

17   he would discuss his treatment plan with mental health.  ECF No. 29-3 at 61; ECF No. 29-4 at 5-

18   6, ¶ 11.

19          Dr. Naseer left MCSP in May 2013.  ECF No. 29-2 at 5, ¶ 25; ECF No. 41 at 3, ¶ 25.

20   Subsequent examinations of plaintiff by other medical professionals reached conclusions

21   consistent with Dr. Naseer's assessments.  A July 5, 2013 examination of plaintiff by Dr. Jajal

22   Solatanian revealed that plaintiff's arthritis was well controlled.  Dr. Solatanian's progress note

23   stated that the "psoriatic arthritis, [is] at goal.  [Plaintiff] is doing very well and is very functional

24   and able to do all his activities of daily living.  I will continue with current treatment."  ECF No.

25   29-3 at 63-64.  Per plaintiff's request, Dr. Solatanian changed plaintiff's pain medication from

26

27   ──────────────────
     [4]  According to plaintiff, defendant Smiley told plaintiff in the Second Level review interview
     that it was his "medical opinion" that plaintiff did not need tramadol.  ECF No. 36 at 12-13, ¶ 21.
28   Plaintiff provides no record support for this statement.

                                                    14

Naprosyn to Celebrex. ECF No. 29-3 at 63. Dr. Solatanian also treated plaintiff for an infection arising from a toenail plaintiff improperly had cut off. ECF No. 29-3 at 63.

On July 5, 2013, plaintiff also consulted with a rheumatologist who similarly concluded that the arthritis, and toe infection were under control. Rheumatology referred plaintiff to podiatry for continued assessment of the toe infection. ECF No. 29-3 at 66.

On August 9, 2013, plaintiff again consulted with rheumatology and was referred to podiatry for degenerative joint disease and feet pain. ECF No. 29-2 at 5, ¶ 27; ECF No. 29-3 at 74; ECF No. 41 at 3, ¶ 27.

On October 7, 2013, plaintiff's hammertoes were evaluated by podiatry. Plaintiff renewed his request for orthopedic boots. That same day, podiatry submitted a request for plaintiff to be measured for orthopedic boots based on his having multiple hammertoe deformities. ECF No. 29-2 at 6, ¶ 28; ECF No. 29-3 at 76; ECF No. 41 at 3, ¶ 28. The request was approved on October 11, 2013. ECF No. 29-2 at 6, ¶ 28; ECF No. 29-3 at 78; ECF No. 41 at 3, ¶ 28.

On December 20, 2013, plaintiff received new orthopedic boots. ECF No. 29-2 at 6, ¶ 29; ECF No. 29-3 at 80; ECF No. 41 at 4, ¶ 29.

F.  Discussion

1.  Deliberate Indifference – Defendant Dr. Naseer

a.  Orthopedic Boots

Plaintiff alleges that that Dr. Naseer was deliberately indifferent to plaintiff's serious medical need for new orthopedic boots in violation of the Eighth Amendment. ECF No. 9 at 2, 5; ECF No. 40 at 6-7. Plaintiff claims that Dr. Naseer ignored his medical file, which included a "documented diagnosis" and "accommodation chronos" justifying the issuance of new orthopedic boots. ECF No. 40 at 6. Plaintiff contends that Dr. Naseer "malicious[ly] denied plaintiff [orthopedic boots] to cause him pain, suffering, and immobility." ECF No. 41 at 2, ¶ 16. The record does not support plaintiff's claims. Rather, the undisputed facts establish that Dr. Naseer's response to plaintiff's request for new orthopedic boots was medically appropriate and did not constitute deliberate indifference to plaintiff's medical need.

////

As an initial matter, it is undisputed that when Dr. Naseer first met with plaintiff, plaintiff was in possession of orthopedic boots with specially made soft sole inserts. It is also undisputed that Dr. Naseer never denied plaintiff the use of those boots or inserts. Indeed, plaintiff concedes that he took his orthopedic boots and inserts with him when he was transferred to MCSP and had them in his possession at all relevant times, with the exception of two weeks when they were taken from him by custody while he was in administrative segregation.[5] ECF No. 29-2 at 6, ¶ 30; ECF No. 41 at 4, ¶ 30.

Additionally, plaintiff concedes that only the boots—and not the orthotic soft sole inserts—needed replacing. ECF No. 29-2 at 6, ¶ 32; ECF No. 41 at 4, ¶ 32. Thus, plaintiff's complaint against Dr. Naseer is that he made plaintiff "wear old boots" that had holes until he received new boots in December 2013. ECF No. 29-5 at 18-20 [Nunez Dep. at 62-64]. Plaintiff's claim that he was deprived of "new" boots and was required to wear the "old" boots does not rise to the level of an Eighth Amendment violation. The Eighth Amendment does not require inmates to have "unqualified access to health care," Hudson, 503 U.S. at 9, or immunize inmates from the "routine discomfort[s]" of prison. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Moreover, plaintiff admits that he was able to effectively place the orthotic inserts from the old boots into his tennis shoes, which allowed him to engage in daily activities and to play sports. ECF No. 29-2 at 6, ¶ 33; ECF No. 29-5 at 26-27 [Nunez Dep. at 77-78]; ECF No. 41 at 4, ¶ 33. Accordingly, plaintiff received the benefit of the orthotics despite his claim that his boots were "worn."

The record is also devoid of any objective or subjective findings to justify a medically necessary accommodation for new orthopedic boots to replace the old boots. In his February 1, 2013 exam, Dr. Naseer documented plaintiff's normal gait and found only a minor deformity of plaintiff's left middle toe and no significant foot deformity, no inflammation, and no existing chrono[6] for orthopedic shoes in his medical records. ECF No. 29-3 at 46. The radiological

---

[5] At some point, plaintiff threw away his orthopedic boots. ECF No. 30-3 at 5, ¶ 31; ECF No. 36 at 14, ¶ 31.

[6] In his opposition, plaintiff claims that Dr. Naseer falsely represented that plaintiff did not have a chrono for the orthotic boots. ECF No. 40, at 6. This characterization is misleading. According

16

results were consistent with the physical exam and only evidenced hammertoe deformities but no significant finding. ECF No. 29-2 at 2, ¶ 11; ECF No. 29-3 at 39; ECF No. 41 at 2, ¶ 11. Plaintiff has proffered no evidence to dispute Dr. Nasser's documented detailed examinations. Furthermore, Dr. Naseer was not alone in this assessment that an accommodation for new orthopedic boots was not appropriate: a request for orthopedic shoes submitted in April 2012 was denied by a committee of physicians at plaintiff's prior prison facility. ECF No. 29-2 at 2, ¶¶ 8, 10; ECF No. 29-3 at 35; ECF No. 41 at 2, ¶¶ 8, 10. The fact that a different doctor later approved plaintiff's request for new orthopedic boots is not sufficient to establish deliberate indifference by Dr. Naseer. A difference of opinion between medical providers is not sufficient to establish deliberate indifference Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058, and plaintiff has not presented evidence that Dr. Nasser's actions were medically unacceptable at the time of treatment, Jackson, 90 F.3d at 332.

Even if the court assumes that Dr. Naseer should have requested new orthopedic boots for plaintiff, and that he deliberately ignored plaintiff's potential serious medical need, plaintiff cannot prevail on his Eighth Amendment claims because harm is a necessary element of deliberate indifference. Jett, 439 F.3d at 1096 (deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need *and* (b) harm caused by the indifference" (emphasis added)); Wood, 900 F.2d at 1335 (delay in treatment does not constitute deliberate indifference unless it causes substantial harm); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (finding denial of surgery was not deliberate indifference unless it was harmful).

Plaintiff does not specify in his pleadings, nor explain during his deposition, what harm he suffered from any denial of new orthopedic boots, apart from an assertion of increased foot pain. Indeed, there is no evidence that that plaintiff suffered any harm from wearing his old boots while

---

to Dr. Naseer's declaration, after reviewing plaintiff's medical file, he did not identify any "existing" chrono for the orthotics. ECF No. 29-4 at 3, ¶ 6. Indeed, plaintiff admits that in April 2012, his prior prison institution denied his request for new orthotics. ECF No. 29-2 at 2, ¶ 10; ECF No. 41 at 2, ¶ 10. Plaintiff has not presented any evidence of a 2013 chrono. Accordingly, Dr. Naseer accurately represented that plaintiff did not have an existing chrono in 2013.

waiting for new boots.[7]  Although plaintiff experienced an infection on his left toe in July 2013, it was the result of improper toenail clipping by plaintiff, and not the old boots.  ECF No. 29-3 at 63.  The exam note states: "The patient states that he actually cut a piece of his toenail off and now it is painful, swollen, and bleeding.  I instruct the patient to avoid cutting his nails and if he has any issues with his nails he needs to notify the medical staff so proper treatment can be done."  ECF No. 29-3 at 63.  Furthermore, no physician suggested that plaintiff was injured by wearing his old boots or using the orthotic inserts in his tennis shoes while waiting for the replacements boots, and plaintiff did not report that any physician described harm arising from wearing his old boots.  ECF No. 29-5 at 26-27 [Nunez Dep. at 77-78].  Plaintiff also admitted that he played sports while under the care of Dr. Naseer and used tennis shoes with inserts while awaiting new orthopedic boots.  ECF No. 29-2 at 6, ¶ 33; ECF No. 29-5 at 26-27 [Nunez Dep. at 77-78]; ECF No. 41 at 4, ¶ 33.  Finally, the evidence demonstrates that any harm plaintiff suffered due to the denial of replacement boots was *de minimus*.  See Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) (the Prison Litigation Reform Act requires "a showing of physical injury that need not be significant but must be more than *de minimis*" in order to bring a federal civil action).

Plaintiff has thus failed to create triable issues of fact that Dr. Naseer acted deliberately indifferent to plaintiff's medical need for orthopedic boots and that plaintiff sustained any compensable injury from Dr. Naseer's denial of new orthopedic boots.

### b.  Referral to Podiatry

Plaintiff's claim that Dr. Naseer did not refer plaintiff to a podiatrist is without merit.  The undisputed evidence demonstrates that, although Dr. Naseer's exams in January and February 2013 did not indicate any need for a podiatry consultation, on April 11, 2013, Dr. Naseer documented that a podiatry referral had been made.  ECF No. 29-2 at 4-5, ¶ 22; ECF No. 29-3 at 57; ECF No. 41 at 3, ¶ 22.  Accordingly, any claim that Dr. Nasser was deliberately indifferent to plaintiff's medical need based on his failure to refer him to podiatry fails.

---

[7]  Plaintiff agreed that typically the time between a podiatry order and receipt of orthotics is six months.  ECF No. 29-5 at 23.  Therefore, even if Dr. Naseer had issued an order for the accommodation, plaintiff would have used his "old" boots for a period of six months until he received the new ones.

### c. Hammertoe Diagnosis

Any argument that Dr. Naseer incorrectly diagnosed plaintiff as having hammertoes is devoid of record support and does not support a deliberate indifference claim. A hammertoe diagnosis is clearly established in the medical records, which include assessments of plaintiff's hammertoes by podiatry and radiology over a period of years. Indeed, plaintiff was diagnosed with hammertoes as early as May 2003. ECF No. 29-2 at 2, ¶ 2; ECF No. 29-3 at 17; ECF No. 41 at 1, ¶ 2. Thereafter, the medical records reflect numerous hammertoe diagnoses by several different physicians. ECF No. 29-3 at 9, ¶ 20, 23, 39, 76, 78. Even the November 28, 2012 x-ray taken immediately before Dr. Naseer first examined plaintiff indicated that plaintiff had hammertoes. ECF No. 29-2, at 2, ¶ 11; ECF No. 41 at 2, ¶ 11. In support of his argument that there is a dispute as to his hammertoe diagnosis, plaintiff cites medical records that do not mention the hammertoe condition. The fact that the hammertoe diagnosis is not mentioned in every medical record, however, does not establish that plaintiff does not have the condition. And even if the diagnosis had been incorrect – indeed, even if the diagnosis had been so incorrect as to constitute medical negligence – that fact would not support an Eighth Amendment violation. See Wood, 900 F.2d at 1334.

### d. Discontinuation of Tramadol

Plaintiff also alleges that Dr. Naseer violated his Eighth Amendment rights by discontinuing his tramadol prescription. Plaintiff alleges that he was "pain free" when taking the tramadol, and that after it was tampered and then discontinued, he was not functioning well, was in severe pain, had limited mobility, and "only played each sport once." ECF No. 36 at 12, ¶¶ 18-19. He also asserts that the Naproxen and other medications "did nothing for the managing of the pain." Id. at 12, ¶ 20.

To the extent plaintiff's allegations create a disputed issue of fact regarding the degree of pain he suffered when tramadol was discontinued, the dispute is ultimately immaterial because there is no evidence to support a finding that Dr. Naseer acted with deliberate indifference to plaintiff's medical needs by recommending the discontinuation of tramadol. To the contrary, the evidence is undisputed that Dr. Naseer prescribed medications that he believed were most

1 appropriate for plaintiff's condition, including Methotrexate, Humira and NSAIDs, and
2 repeatedly responded to plaintiff's pain complaints by offering him alternative pain medications
3 that were appropriate based on plaintiff's past drug use, but plaintiff refused these alternative pain
4 medications. Despite Dr. Naseer's determination that tramadol was not medically indicated or
5 appropriate, Dr. Naseer consulted with, and presented plaintiff's case to, the Pain Management
6 Committee. The committee concluded that tramadol should be discontinued because of the
7 propensity of the drug to cause severe side effects, including abuse and addiction, and because
8 plaintiff's condition did not indicate the use of the narcotic.[8] ECF No. 29-3 at 48-49. It is
9 undisputed that plaintiff had a history of abusing narcotic substances, which made him vulnerable
10 to the addictive drug. As a prisoner, plaintiff is not entitled to every medical treatment he desires.
11 See Hudson, 503 U.S. at 9; Toguchi, 391 F.3d at 1058. Thus, because plaintiff is not entitled to
12 the pain medication of his choice (tramadol) and because he could have taken alternative pain
13 medication but refused, plaintiff's deliberate indifference claim against Dr. Naseer falls short.

14          In addition, plaintiff's examinations consistently revealed no objective or subjective
15 findings justifying administration of tramadol. That plaintiff reported no impairment in his
16 activities of daily living further demonstrates that there was no need for tramadol. ECF No. 29-3
17 at 7, 59, 63-64. Furthermore, although plaintiff claims he relied on tramadol for pain relief, he
18 concedes he did not always take tramadol as prescribed. ECF No. 29-2 at 7, ¶ 39; ECF No. 41 at
19 4, ¶ 39.

20          The evidence is thus undisputed that Dr. Naseer listened to plaintiff's pain complaints and
21 treated plaintiff with appropriate pain medications. On multiple occasions, Dr. Naseer offered
22 plaintiff other pain medications to supplement the treatment regimen, but plaintiff refused.
23 Plaintiff has not produced any evidence to rebut the medical findings that tramadol was not
24 medically appropriate for him. Nor has plaintiff established that he is qualified to offer an
25 opinion as to proper pain management treatment. Plaintiff's disagreement with Dr. Naseer and
26 other physicians as to proper pain medication treatment is not enough to establish a deliberate

27
28
_____
[8] Plaintiff acknowledged that the Pain Management Committee made the ultimate decision
whether he would continue to receive tramadol. ECF No. 29-2 at 7, ¶ 38; ECF No. 41 at 4, ¶ 38.

indifference claim.  See Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058.

In sum, the record is devoid of evidence that plaintiff's pain medication treatment was medically unacceptable and that it was chosen "in conscious disregard of an excessive risk to plaintiff's health."  Jackson, 90 F.3d at 332.

e.  Conclusion

The undisputed evidence demonstrates that Dr. Naseer thoroughly reviewed plaintiff's medical records upon his arrival at MCSP and used his best medical judgment to determine how to treat plaintiff.  Dr. Naseer's treatment of plaintiff was appropriate and consistent with community standards for best medical practices.  See ECF No. 29-3 at 1-11.  Although plaintiff may disagree with the medical treatment decided upon by Dr. Naseer, a difference of opinion does not create a cognizable claim under section 1983.  See Franklin v. Oregon State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).

2.  Deliberate Indifference – Defendants Dr. Smith and Smiley

Plaintiff alleges that defendants Smith and Smiley acted with deliberate indifference to plaintiff's serious medical needs when they denied plaintiff's healthcare appeals regarding his request for orthopedic boots and tramadol at the first and second levels of review.  ECF No. 9 at 7, 9; ECF No. 36 at 9.  According to plaintiff, Dr. Smith had the power to override Dr. Naseer's decision and defendant Smiley had the power to override Dr. Naseer and Dr. Smith's decision.  ECF No. 9 at 7, 9.

As an initial matter, plaintiff is unable to prove the elements of a constitutional violation purely for the processing and/or reviewing of his inmate appeals.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific grievance procedure") (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).

Furthermore, in light of the conclusion reached above that Dr. Naseer is entitled to summary judgment because the evidence does not establish that he was deliberately indifferent to plaintiff's medical needs by denying plaintiff's request for new orthopedic boots and by discontinuing plaintiff's tramadol prescription, Dr. Smith and Smiley, who merely responded to plaintiff's administrative appeals regarding those same issues, likewise cannot be found to have

21

been deliberately indifferent to plaintiff's serious medical needs.[9] See Trillo v. Grannis, No. 2:06-CV-00075-JKS-DAD, 2008 WL 115109, at *12 n.8, 2008 U.S. Dist. LEXIS 2428, at *42-43 n.8 (E.D. Cal. Jan. 11, 2008), report and recommendation adopted, 2008 WL 2018339, 2008 U.S. Dist. LEXIS 37787 (E.D. Cal. May 8, 2008).

### 3. Conclusion

For the reasons set forth above, defendants' motions for summary judgment should be granted. Because the court finds no violation of plaintiff's Eighth Amendment rights, it need not address defendants' arguments that they are entitled to qualified immunity.

## IV. Requests for Appointment of Counsel

Plaintiff has filed two requests that the court appoint counsel. ECF Nos. 27, 35. In light of the court's recommendation that defendants' motions for summary judgment be granted, the requests for counsel will be denied.

IT IS HEREBY ORDERED that plaintiff's requests for appointment of counsel (ECF Nos. 27, 35) are denied.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motions for summary judgment (ECF No. 29, 30) be granted; and

2. Judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[9] Similarly, Dr. Smith cannot be found to have been deliberately indifferent to plaintiff's serious medical needs based on his participation in the Pain Management Committee's decision to uphold Dr. Naseer's decision to discontinue plaintiff's tramadol prescription. As noted above, the committee agreed with Dr. Naseer that plaintiff's tramadol prescription should be discontinued because plaintiff's medical records and history indicated that narcotic treatment was not necessary or appropriate. Plaintiff also makes a fleeting allegation that Dr. Smith was somehow deliberately indifferent to his medical needs by referring him to podiatry "only after multiple requests." ECF No. 26 at 5-6. The evidence is undisputed that Dr. Smith twice approved a podiatry consult for plaintiff in connection with plaintiff's orthopedic boots appeal grievance. There is no evidence to sustain a reasonable inference that Dr. Smith knew of, and disregarded, a substantial risk of harm to plaintiff. Nor is there any evidence to indicate that Dr. Smith at any time denied, delayed or intentionally interfered with plaintiff's medical care. See Estelle, 429 U.S. at 104-05. Indeed, plaintiff was subsequently examined by the podiatrist and received the boots he requested. Therefore, plaintiff has failed to demonstrate any harm related to Dr. Smith's alleged delay in referring plaintiff to podiatry.

1   after being served with these findings and recommendations, any party may file written

2   objections with the court and serve a copy on all parties.  Such a document should be captioned

3   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

4   failure to file objections within the specified time may waive the right to appeal the District

5   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6   DATED: January 30, 2017

7

8   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28